### DETERMINED IN THE

## COURT OF ERRORS AND APPEALS,

#### OF THE

## STATE OF NEW JERSEY,

#### AT MARCH TERM, 1855.

---

### JOHN S. WOOD v. SAMUEL FITHIAN AND ROBERT L. FITHIAN.

1. The act authorizing certain of the justices of the Supreme Court, during term time, to sit apart for the hearing of common business, is not unconstitutional. It is not necessary that the whole, or a majority of the justices constituting that court, under the constitution, should hear and determine any particular cause.

2. It is no error for a justice of the peace to sign a summons with the initials of his christian name, instead of writing it in full.

3. It is not cause for reversing the judgment of a justice, that the book of account produced in evidence, varied from the copy of account filed, if there was other lawful evidence to support the demand in such particulars; and on *certiorari* the court cannot review the weight of the evidence.

4. If in a suit against J. W., a book of account is produced, charging the item sued for, to "the sloop Gen. Jackson and owners," and there is evidence that J. W. was the owner, it is sufficient to sustain the action.

5. It is no bar to the recovery of an account against the owner of a vessel, that the account by the maritime law is a lien on the vessel and may be recovered by proceeding against it.

---

The writ of error in this cause, removed into this court the judgment and proceedings of the Supreme Court, in a cause brought up to that court by *certiorari* from the court for the trial of small causes. The points raised and

838

Wood v. Fithian.

attempted to be raised in this court, are clearly set forth in the opinion of the court, delivered by

POTTS, J. This was an action of debt, brought by the Fithians against Wood, in a justice's court. Judgment was rendered for the plaintiffs; an appeal was taken to the Cumberland pleas, and the plaintiffs were again successful; upon which, the judgment was brought up by *certiorari* to the Supreme Court, and affirmed; and this judgment is brought here by this writ of error.

The first error assigned is, that the argument in *certiorari* was heard, and the case decided, by one of the justices of the Supreme Court, at a regular term of said court, the said justice sitting alone in a separate apartment from that in which, at the time, three or more of the justices of said court were then holding a stated term of said court, hearing and deciding causes, whereby two Supreme Courts were in session at the time, the same not being warranted or authorized by the constitution of the state.

This assignment is intended to bring up the question as to the constitutionality of third section of the act, relative to the Supreme and Circuit Courts, *Rev. St.* 196, which provides, " That it shall be lawful for the justices of the Supreme Court, at every term thereof to designate in such way as to them may seem proper more of their number to sit, during term time, in a separate apartment from that in which the regular term is held, for the purpose of hearing and deciding all such matters by the rules of the said court are, or may be, denominated common business; whose decisions and judgments shall be as good and effectual as if they had been rendered at the bar of said court." A section which was incorporated into the above act in the revision of 1846, from the fourth section of an act approved March twenty-four, 1845; *Pamp. L.* 154.

In pursuance of the provisions of this section, the Supreme Court have, for the last ten years, uniformly assigned to a portion of their number the duty of hearing common business in a separate room during the continuance of the terms;

and as *certioraries* from the Court of Common Pleas, on appeal, are designated as belonging to that class of business by rule, such cases have ordinarily been heard by these justices. The act was intended to facilitate the dispatch of business, and it has enabled the court, generally, to dispose of all the cases which were ready to be argued, at each successive term. The justices sitting for the dispatch of common business, have authority, by rule, to order any matters of that description to be set down on the paper, when, in their opinion, the case requires it; and the court have ordered arguments of that class to be heard before all the judges, where the questions involved were difficult or complicated, and the counsel on either side desired it. A very large proportion of the suits brought in the Supreme Court have, in some stage of their progress, been before these justices, and they have disposed of nearly all the matters called common business, which have been before the court during the last ten years, and yet the constitutionality of the law under which they acted has never before been called judicially in question. Whatever sanction, time, usage, and acquiescence can give to a public statute of this description this statute has the benefit of. The constitution, it is true, created but one Supreme Court, to consist of a chief justice and four associate justices; but it left it to the legislature to increase or diminish the number to not less than two, and to pass all necessary laws regulating the practice and the mode of transacting business in this court. By law, one justice may hold the court, and his decisions are made as binding as if all the justices were present. It may happen that by reason of absence at the circuits, or sickness, or other causes, the number actually sitting may be reduced to one; and the force of the argument against the constitutionality of the law seems to be reduced to this, that when the justices are *present* they must *all* hear and *all* adjudge upon every motion made, and every matter argued, at the same place and time.

The act was undoubtedly passed under the impression, that the power to regulate the practice and modes of pro-

Wood v. Fithian.

ceeding in the Supreme Court, embrace the power of making provision for the facilitation of suits and the dispatch of business. That as the power was undoubtedly in the legislature of enacting, that all these matters of common business might be heard by a justice at chambers, it had the power to say that one or more justices in term time, might hear and dispatch this same business, sitting as the Supreme Court, in a separate chamber from the justices who were engaged in hearing cases on the paper. It was not two Supreme Courts which the act contemplated, but one court, dispatching different classes of judicial business, by its different members at the same time.

But this question, in point of fact, is not regularly before the court in this case, though it has been discussed at length in the brief of the counsel for the plaintiff in error.

The record brought up only shows that the case was heard and decided in the Supreme Court; and we can only reverse for errors *apparent* upon the record. To enable a plaintiff in error to avail himself of matters *de hors* the record, such matters must be brought before the court by the proper process, and in legal form, in order that we may act judicially upon them, for we can only adjudicate upon that which is legally before us. And especially upon a constitutional question, gravely made, this court can hardly be expected to pronounce a decision, when the question itself is nowhere presented by the record we are sitting to review.

The remaining assignment of error is, that the court below affirmed the judgment of the court of common pleas, when, by the law and the evidence, the judgment ought to have been reversed.

The reasons relied on for a reversal of the judgment rendered in the court of common pleas, were—

I. That the name of the justice who issued the summons was not signed in full at the foot of the writ. The writ directed the constable to summon the defendants, to be and appear before the subscriber, one of the justices of the peace in and for the county, at his office in Bridgeton town-

ship, on the twenty-third November, at two o'clock in the afternoon, to answer, &c., and it was signed " A. E. HUGHES, Justice of the Peace." The defendant appeared before the justice at the time and place, and demanded a non-suit, on the ground above stated. The defendant was not misled or surprised, or in any way prejudiced by this error, if it be one. In courts for the trial of small causes, the process is signed by the justice himself, there being no clerk to these courts. In the higher courts, the process is signed by the clerk, and the attorney or solicitor; in all these cases the signatures are required by statute, and yet it has never been held, that a summons or a subpœna was void because the clerk, or the attorney or solicitor did not sign his name in full. The cases cited by the plaintiff in error, establish abundantly the proposition that parties must sue and be sued in their proper names—but it does not follow as a sequence that every judicial writ must be signed by the proper officer, with his name in full; and no authority has gone so far. There is no error in this.

II. The next reason relied on was, that the action is brought in the name of two individuals. There is nothing in this, for it nowhere appears that they had not a joint interest in the debt, to recover which the suit was brought.

III. Another reason is, that the demand filed in the justice's court, varied from the plaintiff's book of account. But it appears by the record, that other evidence was offered in support of the plaintiff's demand, besides the book; and when there is any lawful evidence to establish the claim, the Supreme Court does not undertake, on *certiorari*, to decide upon its weight. The object of the writ, is to correct errors in law only.

IV. So the objection, that in the book of account produced in evidence, the charges are made to the sloop General Jackson and owner, without naming him, is not well taken, for the court, upon the whole evidence before them, appear to have been satisfied that the defendant was the owner, and that the articles were had for his use.

V. And the last reason relied on for reversal, is equally

unsound, to wit, that the court had no jurisdiction, because the vessel, and not the owner, was liable, under the rules of the maritime law. The state of demand filed, was against "John S. Wood, owner of the sloop General Jackson," and if, as without anything appearing to the contrary, we are bound to presume, sufficient proof was made, that he was the owner and liable to pay the bill, it was sufficient to entitle the plaintiff to recover.

Upon the whole, there is no error apparent on the record. Let the judgment be affirmed.

Judgment affirmed.

*For Affirmance*—THE CHANCELLOR, THE CHIEF JUSTICE, and Judges ARROWSMITH, ELMER, HAINES, OGDEN, RISLEY, CORNELISON, HUYLER, POTTS, VALENTINE and WILLS.

*For Reversal*—None.